UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARC W.,

                         Plaintiff,

v.                                                      1:20-CV-1121
                                                        (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC          MARY ELLEN GILL, ESQ.
  Counsel for Plaintiff                      KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                  ANDREEA LECHLEITNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

        The parties consented, in accordance with a Standing Order, to proceed before

the undersigned.  (Dkt. No. 14.)  The court has jurisdiction over this matter pursuant

to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-

motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the

Commissioner's motion is granted.

## I.       RELEVANT BACKGROUND

### A.      Factual Background

Plaintiff was born in 1992.  (T. 80.)  He completed the 11th grade.  (T. 36, 72.)

Generally, Plaintiff's alleged disability consists of anxiety, panic disorder, depression,

agoraphobia, Ehlers-Danlos syndrome, migraines, and sleep disorder.  (T. 68.)  His

alleged disability onset date is July 31, 2016.  (T. 80.)

### B.      Procedural History

On August 2, 2017, Plaintiff applied for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act.  (T. 80.)  Plaintiff's application was initially

denied, after which he timely requested a hearing before an Administrative Law Judge

("the ALJ").  On September 4, 2019, Plaintiff appeared before the ALJ, Rosanne M.

Dummer.  (T. 30-56.)  On October 10, 2019, ALJ Dummer issued a written decision

finding Plaintiff not disabled under the Social Security Act.  (T. 7-29.)  On June 22,

2020, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final

decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial

review in this Court.

### C.      The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and

conclusions of law.  (T. 12-25.)  First, the ALJ found Plaintiff had not engaged in

substantial gainful activity since August 2, 2017.  (T. 12.)  Second, the ALJ found

Plaintiff had the severe impairments of: generalized anxiety disorder, bipolar II disorder,

major depressive disorder, panic disorder with agoraphobia, borderline personality

disorder, mood disorder due to physical condition, episodic cannabis abuse and rule out

cannabis dependence, and Ehlers-Danlos syndrome.  (*Id*.)  Third, the ALJ found Plaintiff

did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 13.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform: Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) except Plaintiff could:

> lift/carry 50 pounds occasionally and 25 pounds frequently; sit six of eight hours, and stand/walk six of eight hours.  [Plaintiff] should not work on ladders or scaffold, at unprotected heights, and should avoid work hazards, such as dangerous moving machinery.   He should not perform at commercial driving. [Plaintiff] could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl.  He should avoid work around bright, flashing lights or loud noise (i.e., street construction).  Secondary to mental impairments, [Plaintiff] could understand, remember, and carry out instructions for routine, repetitive, unskilled work; he could sustain attention and concentration for two-hour segments of time in an eight-hour day. [Plaintiff] could interact with coworkers and supervisors for work-related and task-oriented interactions; he could tolerate rare to no contact with the public.  [Plaintiff] is able to adapt to changes in the work setting for routine, repetitive, unskilled work.  He should not have to perform any job that requires mathematic calculations.  [Plaintiff] should avoid fast pace or high production goal work.

(T. 14-15.)  Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 23-25.)

## II.     THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Arguments

Plaintiff makes one argument in support of his motion for judgment on the pleadings.  Plaintiff argues the RFC is not supported by substantial evidence because the opinion of the medical expert was vague, the ALJ did not properly weigh the opinion of the treating nurse practitioner, and the ALJ erred in giving more weight to the non-

examining medical expert over the treating source.  (Dkt. No. 11 at 8-11.)  Plaintiff also

filed a reply in which she deemed no reply necessary.  (Dkt. No. 13.)

### B.    Defendant's Arguments

In response, Defendant makes one argument.  Defendant argues the ALJ's

mental RFC finding was supported by substantial evidence.  (Dkt. No. 12 at 6-16.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v.*

*Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*,

817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether

the ALJ applied correct legal principles, application of the substantial evidence standard

to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*,

615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla,"

and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.     **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there

5

are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

Plaintiff argues the ALJ erred in her reliance on the opinion of non-examining medical expert Jack Thomas, M.D., who opined Plaintiff had moderate-to-mild work-related limitations, because the doctor did not examine Plaintiff and his opinion was "vague."  (Dkt. No. at 11 8-9.)  Plaintiff asserts the ALJ should have given more "weight" to the opinion of treating nurse practitioner Jeanne Salada-Conroy because she was more familiar with Plaintiff's mental status.  (*Id*. at 9-10.)  Defendant argues the ALJ properly formulated Plaintiff's mental RFC on the record as a whole.  (Dkt. No.12.)

Under 20 C.F.R. § 416.920c the ALJ must articulate how she considered certain factors in assessing medical opinions.  *See* 20 C.F.R. § 416.920c(a)-(c)[1].  The regulatory factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, and (5) other factors.  *Id*. § 416.920c(c).  An ALJ must explain her approach with respect to the first two factors when considering a medical opinion, but need not expound on the remaining three.  *Id*. § 416.920c(b).  The ALJ is tasked with analyzing medical opinions at the source-level, meaning that the ALJ need not discuss each and every medical

---

[1]     On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence."  82 Fed. Reg. 5844.  These final rules were effective as of March 27, 2017.  Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017.  *See, e.g.*, 20 C.F.R. § 416.927 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. § 416.920c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process).  Here, Plaintiff filed his claim after March 27, 2017.

opinion in the record, and may apply the factors holistically to a single medical source. *Id*. § 416.920c(b)(1).  These rules do not apply to the ALJ analysis or consideration of nonmedical sources.  *Id*. § 416.920c(d).

Here, the record contains multiple opinions concerning Plaintiff's ability to perform mental functional demands of work.  On September 23, 2019, Dr. Thomas responded to interrogatories posed by the ALJ.  (T. 433-441.)  Dr. Thomas also completed a "Medical Statement of Ability to Do Work-Related Activities (Mental)" form. (T. 439-441.)

In the medical statement form, Dr. Thomas opined Plaintiff had mild limitations in his ability to understand and remember simple instructions and carry out simple instructions.  (T. 439.)[2]  Dr. Thomas opined Plaintiff had mild to moderate limitations in making judgments on simple work-related decisions; interacting appropriately with supervisors; and interacting appropriately with coworkers.  (T. 439-440.)  Lastly, he opined Plaintiff had moderate limitations in: understanding, remembering, and carrying out complex instructions; making judgments on complex work-related decisions; interacting appropriately with the public; and responding to usual work situations and to changes in a routine work setting.  (*Id*.)  Dr. Thomas wrote Plaintiff's global assessment of functioning ("GAF") scores were "largely consistent" with "actual observed symptoms and they are in the mild to moderate range."  (T. 440.)

On August 20, 2019, NP Salada-Conroy completed a "Mental Residual Functional Capacity Questionnaire."  (T. 412-416.)  She noted that she had contact with

---

[2]         The form completed by the doctor defined mild as functioning independently, appropriately, and effectively on a sustained basis is slightly limited.  (T. 439.)  The form defined moderate as functioning independently, appropriately, and effectively on a sustained basis is fair.  (*Id*.)

Plaintiff every two to three months for ten to fifteen minutes.  (T. 412.)  NP Salada-Conroy opined Plaintiff was unable to meet competitive standards in: maintaining regular attendance and being punctual within customary, usually strict tolerances; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically-based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; dealing with normal works stress; and responding appropriately to changes in a routine work setting.  (T. 414.)  She opined he was seriously limited in: remembering work-like procedures; understanding, remembering, and carrying out very short and simple instructions; maintaining attention for two hour segments; making simple work-related decisions; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; being aware of normal work hazards and taking necessary precautions; setting realistic goals or making plans independently of others; dealing with stress of semiskilled and skilled work; interacting appropriately with the general public; and maintaining socially appropriate behavior.  (T. 414-15.)  When asked how many days a month Plaintiff would be absent, NP Salada-Conroy checked the box "more than four days of work per month."  (T. 416.)

On January 2, 2018, consultative examiner Susan Santarpia, Ph.D., performed an examination and provided a medical source opinion.  (T. 328-332.)  Based on her examination, Dr. Santarpia opined Plaintiff was able to understand, remember, and apply simple as well as complex directions and instructions; use reason and judgment

to make work-related decisions, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, and be aware of normal hazards and take appropriate precautions within normal limits.  (T. 331.)  She opined Plaintiff had mild limitations in interacting appropriately with supervisors, coworkers, and the public.  (*Id*.)  Plaintiff also had mild limitations in regulating emotions, controlling behavior, and maintaining well-being.  (*Id*.)

On January 12, 2018, State agency medical consultant, H. Tzetzo, reviewed the record.  (T. 75-77, 333-335.)  Dr. Tzetzo opined Plaintiff had marked limitations in his ability to interact appropriately with the general public, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others.  (T. 76-77.)  All other areas of functioning Plaintiff had none to moderate limitations.  (T. 76-77.)

The ALJ found Dr. Santarpia's opinion "somewhat persuasive."  (T. 20.)  The ALJ concluded the opined limitations were consistent with her examination finding; however, additional "considerations" were warranted based on evidence provided at the hearing level.  (*Id*.)  The ALJ also found Dr. Tzetzo's opinion "somewhat persuasive."  (*Id*.)  The ALJ concluded the doctor's opinion that Plaintiff had marked limitations in certain areas of functioning was not supported by the record.  (*Id*.)  Of note, Plaintiff does not argue the ALJ erred in her assessment of the opinions provided by Drs. Santarpia or Tzetzo. (Dkt. No. 11 at 8-11.)

The ALJ found Dr. Thomas's opinion "persuasive because it is consistent with the overall record evidence."  (T. 23.)  The ALJ concluded Dr. Thomas's opinion was

consistent with Plaintiff's course of treatment; the doctor performed a longitudinal review

of the record; he is a medical expert recognized by the Commissioner of Social

Security; he treats patients for psychological conditions; he supervises clinics and

serves as an expert in court proceedings; he's trained in clinical and neuropsychology;

he is the director of clinical development, and he is a college professor.  (T. 22-23.)

Overall, the ALJ stated she adopted the doctor's findings in her RFC with some

additional limitations.  (T. 22.)

The ALJ found NP Salada-Conroy's opinion "not persuasive."  (T. 21.)  The ALJ

concluded the assessment was "internally inconsistent" and the findings were not

supported by progress notes.  (*Id*.)  The ALJ further concluded the assessed limitations

were inconsistent with Plaintiff's reports of searching for a job.  (*Id*.)  The ALJ found the

nurse practitioner's limitations were inconsistent with Plaintiff's level of treatment.  (*Id*.)

Lastly, the ALJ considered Dr. Thomas's opinion, that Ms. Salada-Conroy's "marked

ratings" were inconsistent with objective evidence.  (*Id*.)

First, Plaintiff argues the ALJ erred in "relying on Dr. Thomas's vague opinion

without providing sufficient explanation for how he translated the various mild, mild to

moderate, and moderate limitations into the specific limitations he included in the RFC."

(Dkt. No. 11 at 8.)[3]  Contrary to Plaintiff's assertion, Dr. Thomas's opinion was provided

on a Social Security form which provided definitions of the terms provided; therefore, his

opinion was not vague.  Further, the ALJ's RFC mental determination accounted for the

---

[3]      Plaintiff also argues, "Moreover, the opinion restricting Plaintiff from "prolonged" standing, walking, squatting, bending, heavy lifting, and carrying – a wide range of activities – was also not defined and it is entirely unclear what Dr. Rosenberg meant by it."  (Dkt. No. 11 at 9.)  This appears to be a typo. Plaintiff was not seen by Dr. Rosenberg and the consultative examiner who did examine Plaintiff opined he had "minimal physical limitations."  (T. 326.)

limitations provided by the doctor by restricting Plaintiff to simple, repetitive, and routine tasks; to work that required rare-to-no contact with the public; and to work that required no fast pace or high production goals.  (T. 14.)  The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work.  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined [plaintiff] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations."); see *Whipple v. Astrue*, 479 F. App'x. 367, 370 (2d Cir. 2012) (consultative examiners' findings that plaintiff's depression caused moderate limitations in social functioning ultimately supported the ALJ's determination that plaintiff was capable of performing work that involved simple tasks and allowed for a low-stress environment).  Therefore, because the form completed by the doctor was provided by the Social Security Administration and contained specific definitions of the terms used, the opinion was not vague and the ALJ's RFC adequately accounted for the limitations she found supported by the evidence in the record.

Second, Plaintiff argues the ALJ substituted her own lay opinion for NP Salada-Conroy's opinion in concluding the opinion was unpersuasive because the ALJ deemed her opinion not supported by progress notes.  (Dkt. No. 11 at 9.)  However, an ALJ may rely on inconsistencies between opinions and treatments notations in assessing opinion evidence.  *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (the ALJ properly weighed opinion of treating physician concluding limitations provided were inconsistent with doctor's own treatment notes and plaintiff's self-report of her activities of daily living).  Here, the ALJ did not substitute her opinion for that of the nurse

practitioner; instead, and pursuant to her statutory authority, the ALJ considered the medical and other evidence in the record in its totality to reach an RFC determination. *See Curry v. Comm'r Soc. Sec.*, No. 20-1472, 2021 WL 1942331 (2d Cir. May 14, 2021).

Third, Plaintiff argues the ALJ erred in "giving more credit" to Dr. Thomas's opinion because the case involved mental impairments.  (Dkt. No. 11 at 10.)  In support of his argument, Plaintiff relies on the holding in *Ransome v. Colvin*, 164 F. Supp. 3d 427, 431 (W.D.N.Y. 2016), in which the Court stated "it is improper to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient."  However, Plaintiff argument is erroneous.

Plaintiff's reliance on *Ransome* and its contrary holding is misplaced*.  See Davis v. Comm'r of Soc. Sec.*, No. 18-CV-6519, 2020 WL 1983916, at *4 (W.D.N.Y. Apr. 27, 2020).  The state agency consultant in *Ransome* speculated about the effect of the plaintiff's former drug abuse and alcoholism, leading to the conclusion that the ALJ erred in giving great weight to that opinion.  *Ransome*,164 F. Supp. 3d at 432. However, the Second Circuit held that "the report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record." *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012).  Indeed, the Second Circuit has repeatedly held that an ALJ may rely on the opinion of a non-examining medical expert in formulating plaintiff's RFC.  *See Botta v. Colvin*, 669 F. App'x 583, 584 (2d Cir. 2016) (finding that the ALJ properly relied on medical expert testimony in assessing plaintiff's functioning); *Hancock v. Barnhart*, 308

F. App'x 520, 521 (2d Cir. 2009) (explaining that the opinions of medical experts may constitute substantial evidence in support of an ALJ's determination); *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (finding that the regulations permit the opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence in the record (internal citations omitted)).  Therefore, the ALJ did not commit legal error in affording more weight to a non-examining medical expert over a treating nurse practitioner.

Overall, Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).  As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision.  *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).  As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:        June 15, 2021

William B. Mitchell Carter
U.S. Magistrate Judge